UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| MAKS, INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No.: 3:10-CV-443 |
| v. ) | (VARLAN/GUYTON) |
| ) | |
| EODT GENERAL SECURITY CO., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on Plaintiff MAKS Inc.'s Motion for Judgment on the Pleadings with Respect to Liability on Counts I, III, IV, and VI of the Complaint [Doc. 11]. Defendants EODT General Security Company, EOD Technology, Inc., and Matt Kaye (together, the "EODT defendants") responded in opposition [Doc. 17], and plaintiff replied [Doc. 24]. The Court has carefully considered the motion and, for the reasons that follow, the Court will deny the motion.

**I.    Background**

Plaintiffs[1] commenced this action on or about October 21, 2010 [Doc. 1]. Defendant EOD Technology, Inc. ("EODT") is "a professional services company 'providing strategic stability operations support and integrated critical mission solutions that ensure the safety and operational readiness of government and corporations worldwide[,]'" "as part of a much

---

[1]There are several plaintiffs in this action—MAKS, Inc., Gopalakrishna Pillai Ajeesh Kumar Kammarayil, Mohammed Azad Shabbir, John Doe 1, John Doe 2, and John Doe 3—but only plaintiff MAKS Inc. filed the instant motion for judgment on the pleadings.

wider range of services" [Doc. 1 ¶ 1; Doc. 6 ¶ 1]. It "has served as the prime contractor to the United States Air Force [("USAF")] to provide services to upgrade and expand the capabilities of the Bagram Air Field ("BAF") in Afghanistan" [*Id*.]. Defendant EOD General Security Company ("EODT Security") is an affiliate of EODT [Doc. 1 ¶ 2; Doc. 6 ¶ 2]. Plaintiff alleges that EODT Security provides security services to public and private entities in Afghanistan [Doc. 1 ¶ 2]. Matt Kaye is the President of EODT and EODT Security [Doc. 1 ¶ 4; Doc. 6 ¶ 4].

Plaintiff MAKS, Inc. ("MAKS") is a "Kuwait-registered company" whose purpose is "providing turnkey, pre-engineered and temporary modular housing to coalition forces and prime US Government contracting awardees" [Doc. 1 ¶ 3]. MAKS "served as a subcontractor to EODT in the performance of EODT's prime contract with the USAF" [*Id*.].

Plaintiffs allege that, on or about February 18, 2009, MAKS entered into a contract with EODT, known as the Module Contract, to provide relocatable buildings [Doc. 1 ¶ 18].[2] Plaintiffs claim that, under the terms of the Module Contract, "MAKS was to build and transfer to BAF 224 modules (prefabricated shelters fashioned from shipping containers) to serve as housing and office space for U.S. military personnel" and that such contract was "divided into two Work Authorizations, known as WA01 and WA02" [*Id*. at ¶ 20].

---

[2]The Module Contract is attached to the complaint as Exhibit 1.

2

Under WA01, MAKS was to prepare and deliver 112 modules to BAF [*Id.* at ¶ 20(a)]. Plaintiffs allege that payment on WA01 "was due in two tranches: the first 50% payment, or $1,100,000.00 was due upon the execution of the contract and the remaining 50% payment, or $1,100,000.00 was due upon delivery of the modules [to] BAF" [*Id.*]. Plaintiffs allege that MAKS delivered all 112 modules, but that EODT failed to pay $1,100,000 of the contract price [*Id.* at ¶¶ 20(a), 25]. The EODT defendants admit the allegations but claim the modules were not delivered in conformance with the contract requirements and that they do not owe MAKS $1,100,000 [Doc. 6 ¶¶ 20(a), 25].

Under WA02, MAKS was to prepare and deliver an additional 112 modules to BAF on June 1, 2009 [Doc. 1 ¶ 20(b); Doc. 6 ¶ 20(b)]. Plaintiffs claim "payment of the $1,950,000.00 contract price was due in four tranches: the first 25% was due upon the execution of WA02, the second 25% was due upon shipment of the containers from Kuwait, the third 25% was due upon the arrival of the containers in Afghanistan, and the fourth 25% was due upon the installation and final acceptance of the modules" [Doc. 1 ¶ 20(b)]. Plaintiffs further allege that EODT refused to make payment consistent with WA02, which caused MAKS to initiate damage mitigation and not deliver modules [*Id.* at ¶ 27]. The EODT defendants deny these allegations, although they admit MAKS was to prepare and deliver 112 modules on June 1, 2009 but failed to do so [Doc. 6 ¶¶ 20(b), 27].

With respect to WA02, plaintiffs contend that EODT "stole" 90 modules from MAKS on October 23, 2009, and refused to pay for 22 modules [*Id.* at ¶¶ 20(b), 25]. More particularly, plaintiffs submit that on the morning of October 23, 2009, "EODT arrived at the

3

MAKS construction compound in Kabul, Afghanistan . . . with approximately fifteen flat-bed trucks" and "deployed a team of paramilitaries equipped with assault weapons" to load the undelivered modules onto the flat-bed trucks against MAKS's objection [*Id.* at ¶¶ 28–33]. Plaintiffs allege that the EODT security personnel held MAKS's personnel at gunpoint and threatened to shoot people if their demands were not met [*Id.* at ¶¶ 31–32]. Further, plaintiff submits that the modules are now being used by United States service personnel and that EODT has refused to pay for any of the modules delivered or stolen [*Id.* at ¶ 33].

The EODT defendants deny these allegations and assert MAKS failed to deliver the modules to BAF on June 1, 2009 [Doc. 6 ¶¶ 20(b), 25–27]. The EODT defendants, however, admit they took possession of the modules as a result of MAKS's breach of contract [Doc. 6 ¶¶ 28–33].

Plaintiffs further contend that "[t]hroughout the performance period of the [Module C]ontract EODT lacked sufficient knowledge of contracting in Afghanistan to adequately perform on the contract" [Doc. 1 ¶ 22]. As a consequence, plaintiff asserts that "multiple delays were occasioned on the performance of the Module Contract" [*Id.* at ¶ 23]. Plaintiff further alleges that "EODT has refused to provide MAKS with an equitable adjustment for the additional work and the additional effort needed to deliver the modules to Afghanistan" [*Id.* at ¶ 24]. The EODT defendants deny all such allegations [Doc. 6 ¶¶ 22–24].

Plaintiffs also allege that, on or about June 3, 2009, it entered into a contract, known as the Security Contract, with EODT Security to provide security services for MAKS's

4

construction compound in Kabul, Afghanistan [Doc. 20 ¶ 19].[3]  Plaintiffs claim that, under the terms of the Security Contract, "EODT Security was to provide a variety of services to MAKS to keep MAKS personnel and MAKS property secure against external threats" [Doc. 1 ¶ 21].  For example, plaintiff alleges that EODT Security was to "deter, detect, and detain, by use of minimum force, trespassers or persons who illegally gain or attempt to gain access to the MAKS facilities;" "identify and record all vehicles entering MAKS [f]acility;" and "ensure that no unauthorized vehicles, personnel, or materials enter the facility" [*Id.*].

Plaintiffs assert various causes of action on the basis of these, and other, allegations [*See* Doc. 1].  Relevant to the instant motion are the following causes of action: Count I for breach of contract with respect to EODT's refusal to pay for modules delivered under WA01; Count III for breach of contract with respect to EODT's failure to adhere to the dispute resolution provisions of the Module Contract; Count IV for breach of contract with respect to EODT Security's refusal to provide contracted-for security services; and Count VI for conversion [Doc. 1 ¶¶ 35–39, 47–57, 63–69].

## II. Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  The standard of review applicable to a motion for judgment on the pleadings under Rule 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6), and the

---

[3]The Security Contract is attached to the complaint as Exhibit 2.

Court likewise may not consider matters outside the pleadings. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001); Fed. R. Civ. P. 12(d). "All well pleaded material allegations of the non-moving party's pleadings are taken as true and allegations of the moving party that have been denied are taken as false." *Bell v. JP Morgan Chase Bank*, No. 06-11550, 2006 WL 1795096, at *1 (E.D. Mich. June 28, 2006) (citing *Southern Ohio Bank v. Merryl Lynch Pierce Finner and Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). The motion should be granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *United States v. Moriarty*, 8 F.3d 329, 332 (6th Cir. 1993) (citation omitted).

**III.  Analysis**

MAKS contends that judgment on the pleadings is proper with respect to Counts I, III, and VI and that partial judgment is proper with respect to Count IV because of the admissions contained in the EODT defendants' answer. The Court, however, disagrees.

**A.  Count I**

In Count I of the complaint, plaintiffs allege that EODT was to pay MAKS $2,200,000 for the fabrication of 112 modules under WA01 in two installments of $1,100,000 [Doc. 1 ¶¶ 20(a), 36]. Plaintiffs further allege that all such modules were delivered and that EODT failed to pay the final $1,100,000 of the contract price [*Id.* at ¶ 38].

In MAKS's motion, MAKS argues that judgment on the pleadings on Count I is proper because of the admissions by the EODT defendants in their answer [Doc. 11]. In particular, MAKS asserts that the EODT defendants admit that "two payments were due to

6

MAKS for the delivery of 112 modules," that "all 112 of the modules were delivered," and that EODT "made only one of the two required payments called for by WA01" [*Id.*]. The EODT defendants admit that all 112 modules were delivered, but assert that they did not conform to the Module Contract and that MAKS was therefore overpaid [Doc. 6 ¶¶ 36–39; Doc. 17].

Reviewing the complaint and the answer, the Court cannot find that MAKS is entitled to judgment as a matter of law with respect to Count I. The EODT defendants deny that MAKS is owed anything and claim that the delivered modules did not conform with the terms of the Module Contract. Accordingly, MAKS is not entitled to judgment as a matter of law on Count I.[4]

**B.     Count III**

Count III alleges breach of contract as a result of EODT's alleged failure to adhere to dispute resolution provisions set forth in the Module Contract [Doc. 1 ¶¶ 47–52]. Plaintiffs assert that EODT failed to exercise the contract's dispute resolution provisions set forth in Section 16 and instead "resorted to the use of lethal force to seize from MAKS modules that were the subject of the Module Contract" [*Id.* at ¶¶ 49–50]. The EODT

---

[4]MAKS highlights that the EODT defendants deny the allegation set forth in paragraph 38 of the complaint: "EODT has not paid the final $1,100,000.00 required in the contract" [Doc. 24]. MAKS submits that such denial means that the EODT defendants assert that the second payment of $1,100,000 was actually made [*Id.*]. Thus, MAKS argues "EODT never addresses, and thus admits, MAKS allegation that it still owes $1,100,000.00" [*Id.*]. Although clever, the Court finds this argument unconvincing in light of the fact that there is a dispute regarding whether the modules conformed to the Module Contract.

7

defendants deny the allegations and that MAKS is entitled to the relief sought [Doc. 6 ¶¶ 50–52].[5]

Section 16 of the Module Contract, entitled "Disputes and Choice of Law," in relevant part provides:

> The validity, performance, enforcement, and venue for the resolution of any disputes of this Agreement shall be governed by the laws of the State of Tennessee.
>
> The Parties acknowledge that there are a number of informal dispute resolution procedures (such as arbitration, mediation, and informal conference) which will be used in an effort to resolve any controversy or claim arising out of this Agreement, or the alleged breach thereof. The parties agree that the aforementioned mechanisms will be utilized prior to proceeding in a judicial form [sic]. Should any such controversy or claim arise, any party may request in writing that a informal dispute resolution procedure should be utilized, stating in general terms the nature of the proposed procedure and provide the other with sufficient descriptions and information regarding its position to permit informed assessments and decisions. The other party shall then have a period of two (2) weeks in which to respond. If no answer to such request is given within such period, then the requesting party shall be free to pursue any legal remedy which may be available it. If such request is accepted, the procedure outlined in such request shall first be followed prior to either party

---

[5]The Court notes that MAKS makes three arguments in support of its argument that it should be granted judgment as a matter of law on Count III. MAKS argues: (1) that the Module Contract does not provide for "EODT to seize or otherwise take possession of the bargained-for modules as a remedy for an alleged breach of contract"; (2) that, assuming the Tennessee Uniform Commercial Code applies to this case, nothing in the UCC "justifies the seizure of the modules from MAKS's compound"; and (3) "EODT is precluded from taking possession" of the modules under the Federal Acquisition Regulations ("FAR") because it failed to comply with the FAR itself [Doc. 11]. The EODT defendants responded to these arguments in connection with Count VI, which is discussed below. The Court does not address the later two of these arguments because they address matters outside the pleadings. With respect to the first argument, the Court notes that the EODT defendants point to a provision in the contract that could provide the right to take possession of the modules: "Upon termination for cause, EODT may take possession of all materials, supplies, equipment and facilities, purchased or paid for by the Client or EODT and finish the Work or employ any other person or persons to finish the Work" [Doc. 17].

> resorting to judicial procedure. In the event the parties fail to resolve the claim or controversy in the dispute resolution procedure utilized, within two (2) weeks thereafter either party may propose an additional informal dispute resolution procedure and the parties shall proceed in like manner as above.

[Doc. 1, Ex. 1]. Defendants argue that the disputes clause "establishes a precondition for a party to initiate litigation," but the EODT defendants did not initiate litigation and so they "cannot be liable to MAKS for failing to do something prior to litigation EODT never initiated" [Doc. 17].[6]

Under Tennessee law, the interpretation of the Module Contract is a matter of law appropriate for the Court to decide. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). "A cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties," the starting point for which is looking "to the plain meaning of the words in the document to ascertain the parties' intent" and determining whether the language is ambiguous. *Id.* (citations omitted). Contract language is ambiguous if it is "susceptible to more than one reasonable interpretation." *Id.*

If the language at issue here is unambiguous and supports MAKS's argument, then relief may be granted if the pleadings support a breach of the provision. If, however, the language is ambiguous, then relief must be denied at this stage. *See*, *e.g.*, *Crossville, Inc. v.*

---

[6]MAKS's contends that the EODT defendants responded to the allegations of Count III by "asserting that its seizure of the modules was justified 'under contract and law'" [*See* Doc. 11]. The Court, however, finds that MAKS mischaracterizes the answer to Count III. Although in the response to plaintiffs' description of the nature of the action the EODT defendants' assert that "EODT did exercise its rights under contract and law to take delivery of many of the modules at the MAKS compound," the EODT defendants expressly deny the allegations of Count III, including that EODT disregarded the dispute resolution provision [*See* Doc. 6].

9

*Kemper Design Ctr., Inc.*, No. 2:09-0120, 2010 WL 2650731, at *2–3 (M.D. Tenn. July 2, 2010) (analyzing a plaintiff's motion for judgment on the pleadings on its claim regarding breach of a note). The Court finds that the dispute clause is susceptible to more than one reasonable interpretation: the clause could be construed as applying only when a party intends on initiating litigation, as the EODT defendants suggest, but also as applying any time the parties have a "controversy or claim" related to the Module Contract, which could include the facts underlying Count III.[7] Thus, because the dispute provision is ambiguous, MAKS is not entitled to judgment as a matter of law on Count III.

## C. Count IV

Count IV alleges breach of contract with respect to EODT Security's alleged refusal to provide contracted-for security services [Doc. 1 ¶¶ 53–57]. Plaintiffs allege that, under the Security Contract, "EODT Security promised to provide a number of services to MAKS in order to safeguard MAKS personnel and MAKS property," but EODT Security "refused to provide such services" [*Id*. at ¶¶ 54–55]. The EODT defendants deny these allegations [Doc. 6 ¶¶ 53–56].

In its motion, MAKS asserts that, under Section 1.5 and Section 1.8 of the Security Contract, EODT Security must provide MAKS "the names, identification numbers, date of birth, and qualifications of each of EODT's employees present on the MAKS compound on

---

[7]The Court notes that, because it finds the dispute clause ambiguous, it would be appropriate to consider parol evidence to "guide the court in construing and enforcing the contract." *Allstate*, 195 S.W.3d at 612 (citation omitted). However, because the Court is faced with a motion for judgment on the pleadings, it will not consider evidence outside the pleadings.

October 23, 2009, as signed and attested to by a EODT company official" [Doc. 11]. MAKS claims that such information is needed for the trial in this action, but despite MAKS's requests for such information, EODT Security has failed to provide the information [*Id.*]. MAKS thus requests a partial judgment on Count IV and an order compelling EODT Security to provide a listing of the employees who participated in the October 23, 2009 events [*Id.*].

> Section 1.5 of the Security Contract provides:
>
> EODT will maintain a current listing of employees which includes the employee's full name, ID number, date of birth, and qualifications. The list will be validated and signed by a company management official and provided to Client upon request. Updated listings will be provided when any employee's status or information changes.

[Doc. 1, Ex. 2]. Section 1.8 of the Security Contract provides:

> Contractor is required to fully cooperate if called upon to testify or submit a statement in a trial or any related court or legal proceeding. EODT employees called upon to testify will do so in duty status. Replacements must be provided for guards who testify in duty status to ensure all posts are fully manned at all times.

[*Id.*].

Although MAKS frames its request as one for partial judgment on the pleadings and specific performance, MAKS's request is in effect a motion for discovery. Nowhere in Count IV do plaintiffs allege that EODT Security failed to provide the names of the employees involved in the alleged October 23, 2009 events upon request, nor do they make a request therein for EODT Security to provide such names. MAKS, however, asserts that, pursuant to Tennessee law, the Court may "grant any other and different relief from that

11

specifically indicated and prayed for which is justified by the pleadings and the proof" [Doc. 24 (citing *Conn. Indem. Co. v. DeGalleford*, 470 S.W.2d 5, 7 (Tenn. 1971)]. Assuming the Court could grant the relief requested under this principle, the Court declines to do so at this time because the provision of the Security Contract does not unambiguously require the disclosure of the information MAKS seeks, that is a list of certain employees whereabouts on a certain date. Accordingly, MAKS is not entitled to judgment as a matter of law on Count IV.

### D. Count VI

In Count VI, plaintiffs assert a claim for conversion, alleging that "EODT invoked no valid contractual justification for seizing MAKS's property on October 23, 2009" and that "EODT's actions constituted a wrongful assumption and exercise of the right of ownership over goods and chattels belonging to MAKS in a matter that was and continues to be inconsistent with MAKS's rights" [Doc. 1 ¶¶ 63–69]. The EODT defendants deny the allegations of liability [Doc. 6 ¶¶ 63–69].

MAKS argues that the Court "is left with no choice but to enter a judgment of liability in favor of MAKS and against EODT on Count VI" because of the admissions in the EODT defendants' answer [Doc. 11]. The Court finds otherwise. Under Tennessee law,[8] conversion "is the appropriation of tangible property to a party's own use in exclusion or defiance of the owner's rights." *State ex rel Paula Flowers v. Tenn. Coordinated Care*

---

[8] Because the Court's jurisdiction is predicated upon diversity [Doc. 1 ¶ 15], the Court applies the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

12

*Network*, No. M2003-01658-CA–R3-CV, 2005 WL 427990, at *7 (Tenn. Ct. App. Feb. 23, 2005). To establish a claim of conversion, a party must show "(1) the appropriation of another's property to one's use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights." *Id.*

Plaintiff has not even attempted to demonstrate that the pleadings establish these elements, and the Court does not find that they do. Further, the EODT defendants have denied all of the allegations relating to Count VI, and the parties dispute who the owner of the modules was on October 23, 2009. Accordingly, the Court finds that MAKS is not entitled to judgment as a matter of law on Count VI.

## IV. Conclusion

For the reasons explained above, there are multiple issues of fact in dispute and plaintiff is not entitled to judgment as a matter of law. Plaintiff MAKS Inc.'s Motion for Judgment on the Pleadings with Respect to Liability on Counts I, III, IV, and VI of the Complaint [Doc. 11] is hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE