IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| MAKS, Inc., *et. al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:10-cv-00443 |
| | ) | |
| STERLING OPERATIONS, INC. | ) | |
| f/k/a EOD TECHNOLOGY, INC. | ) | Judge: Varlan/Guyton |
| | ) | |
| Defendant, | ) | |

## AFFIDAVIT OF C. SCOTT TAYLOR

C. Scott Taylor, being first duly sworn, deposes and states under oath the following:

1. I am C. Scott Taylor, over 18 years old, competent to give this testimony, and personally familiar with the facts set forth herein.

2. I have been asked by defense counsel to provide certain opinions concerning the generally accepted, and therefore "reasonable" time and expense billing practices for Knoxville area attorneys to represent clients engaged in litigation filed in Federal Court in Knoxville, Tennessee.

3. I have been a member of the Knoxville Bar Association Fee Dispute Resolution Committee since 2008. I have served as Chair/Co-Chair of this Committee since 2009. The Fee Dispute Resolution Committee is a standing committee of the

1

Knoxville Bar Association tasked with assisting attorneys and their clients in resolving disputes related to attorney fees and expenses.

4. As Chairman of this Committee, as well as being a partner with a law firm engaged in the private practice of law in Knoxville, I am familiar with the reasonable time and expense billing practices for Knoxville area attorneys representing clients engaged in litigation filed in Federal Court in Knoxville, Tennessee. The opinions that I express below are made within a reasonable degree of my professional certainty.

5. By way of background, I graduated from The University of Tennessee College of Law in 2000. I am an attorney licensed to practice law in Tennessee, BPR no. 021037. I have been in private practice since 2000. I am a partner with the Knoxville law firm of Bernstein, Stair, and McAdams, LLP. The emphasis of my practice is civil litigation. I have represented clients engaged in construction related disputes. I have represented litigants in Tennessee state and Federal Courts. I am admitted to practice in the state courts of Tennessee, United States District Court for the Eastern District of Tennessee, United States District Court for the Middle District of Tennessee, United States District Court for the Western District of Tennessee, and the United States Court of Federal Claims.

6. I have been asked to review and express certain opinions pertaining to an attorney's fee and expense application filed by Plaintiff MAKS, Inc. ("MAKS"), in the above captioned matter. It is my understanding that there was a contract between MAKS and Sterling Operations, Inc., formerly EOD Technology, Inc. ("EODT"), that allows

2

MAKS, based on the judgment entered, to recover attorney's fees and other expenses for its efforts in successfully defending the Counterclaim by EODT.

7. To inform myself about this litigation, I have reviewed the following:

a) The Original Complaint filed by MAKS and others [Doc. 1];

b) The Answer and Counterclaim to the Original Complaint filed by EODT [Doc. 6];

c) The Answer to the Counterclaim (on the Original Complaint) filed by MAKS [Doc. 8];

d) The Amended Complaint filed by MAKS and others [Doc. 106];

e) The Answer to the Amended Complaint and Counterclaim filed by EODT [Doc. 109];

f) The Answer to the Counterclaim filed by MAKS [Doc. 110];

g) The Civil Docket Sheet for this case printed 4/8/13;

h) The MAKS – EODT Master Subcontract Agreement ("MSA");

i) The Application for attorney's fees and expenses filed by MAKS [Doc. 369];

j) The Brief and supporting information filed by MAKS [Doc. 370]; and

k) Federal and Tennessee caselaw concerning the reasonableness of attorney's fees and expenses.

8. In addition, I have spoken with attorney Brian Quist about the nature of the case and the work undertaken by MAKS to defend the Counterclaim.

9. To begin with, I note that the litigation started with MAKS and the other named and unnamed Plaintiffs filing suit against EODT [Doc. 1]. The emphasis of the Original Complaint and the Amended Complaint [Doc. 106] is clearly the effort by all

3

plaintiffs to obtain a sizeable compensatory and punitive damages award for their tort theories. However, I note that the attorney's fees and expense clause of the MSA, Section 26, is very narrow in scope. It only allows MAKS to recover its attorney's fees and expenses directly attributable to successfully defending EODT's Counterclaim.

10. The context, therefore, is one in which an attorney can "bill" their client for certain limited activities and expenses, but not all activities and expenses, even though the total effort is for the same client.

11. My review of the itemized time from Plaintiffs' counsel [Doc. 370-1] and expenses [Doc. 370-2] indicates MAKS' position to be, with rare exception, that the vast majority of time and expenses incurred by counsel for Plaintiffs MAKS, Ajeesh Kumar, and Azad Shabbir since the filing of the Counterclaim was incurred to defend the Counterclaim . This position is patently not reasonable and not an accepted billing practice, under the above context, for Knoxville area lawyers. It is my understanding that MAKS actually did very little to defend the Counterclaim and presented no rebuttal evidence to the Counterclaim at trial.

12. I have reviewed the affidavit of Robert Green. I very much concur that there are many attorneys and law firms in the Knoxville area capable of defending the Counterclaim. While I note that the modules were to be manufactured by a company in Kuwait and installed in Afghanistan, the contract is for what amounts to residential construction under Tennessee law. The claimed international experiences of Mr. Hennessey purporting to justify applicability of Washington D.C. rates for Mr. Hennessy and Mr. Beins have no bearing on whether MAKS did or did not build the modules in

4

conformance with the contract and install them timely. In summary, $600 an hour for Mr. Hennessey and Mr. Beins to defend the counterclaim in Federal Court in Knoxville is not reasonable.

13. <u>Time Spent</u>

Because MAKS first filed suit, under the context of the MSA attorney's fee and expense clause as described, it would be reasonable for Knoxville area lawyers to adhere to the following billing practices regarding time spent:

    a) Time spent unique to defending the Counterclaim, whereby such time would not have been spent if there was no Counterclaim, <u>is reasonable</u> to be billed to the client under the MSA, Section 26. A good example is MAKS's counsel's entry to prepare an answer to the Counterclaim. But for the Counterclaim, that time would not have been spent.

    b) Time spent that would have been expended anyway because of the Original and Amended Complaint is time that Plaintiffs' counsel would have spent regardless of a Counterclaim. This time <u>is not reasonable</u> to be billed to the client under Section 26 of the MSA. A good example is the Pretrial conference in this case October 22, 2012. Had there been no Counterclaim, Plaintiffs' counsel would have been required to attend anyway.

14. <u>Litigation Expenses</u>

Because MAKS first filed suit, under the context of the MSA as described, it would be reasonable for Knoxville area lawyers to adhere to the following billing practices pertaining to litigation expenses:

5

a) Expenses incurred unique to defending the Counterclaim, whereby such expense would not have been incurred if there was no Counterclaim, <u>are reasonable</u> to be billed to the client under Section 26 of the MSA. A good example is a court reporter expense for taking the deposition of EODT's expert witnesses designated to testify about the Counterclaim.

b) Expenses that would have been incurred anyway because of the Original and Amended Complaint are expenses that Plaintiffs' counsel would have spent regardless of a Counterclaim. Such expenses <u>are not reasonable</u> to be billed to the client under Section 26 of the MSA. A good example is the translator expense for Plaintiffs Kumar and Azad, who I understand testified as part of their own case in chief in prosecution of their tort claims that they were assaulted. Had there been no Counterclaim, Plaintiffs Kumar and Azad would have needed a translator anyway to prosecute their own claims.

15. <u>Meals, Travel, and Accommodations</u>

I note that MAKS has presented claimed expenses directly attributable to Mr. Hennessey and Mr. Beins commuting to Knoxville from out of state. These expenses are generally travel, meals, and accommodations. The following are the reasonable <u>general</u> billing practices in Knoxville, Tennessee, pertaining to such expenses:

a) Generally, billing a client for local mileage and parking from their Knoxville area office to a destination required by the case, such as to the Courthouse or a deposition, <u>is reasonable</u>. While I know many Knoxville area attorneys, including

6

myself, do not charge their clients for this, such expenses <u>are reasonable</u> to pass along to the client.

      b)      Generally, billing a client for lunch while in the middle of client business, such as lunch during trial, <u>is reasonable</u>, especially when the lunch includes the client and trial planning is taking place. While I know many Knoxville area attorneys do not bill their clients for such meals, this type of expense <u>is reasonable</u> to pass along to the client.

      c)      It <u>is not reasonable</u> for a Knoxville area attorney to bill their client for a hotel room, evening meal expenses, entertainment, or commuting related expenses. By definition, a Knoxville-area attorney lives in the Knoxville area and it is normal for the attorney, even during a trial in a different Knoxville-area county, to sleep at home and eat their evening meals at home. By definition, a Knoxville-area attorney lives close by the trial venue and does not need to bill their clients for travel expense for commuting from out of state. The travel, hotel, evening meal, entertainment, and commuter related expenses for Mr. Beins and Mr. Hennessey are incurred solely due to MAKS's unnecessary choice to use out of state counsel. As such, under the context of the MSA attorney's fees clause, these expenses <u>are not reasonable</u>.

Indicative of this point, MAKS has not presented claimed expenses for travel, evening meals, entertainment, and hotel accommodations for Plaintiffs' Knoxville area local counsel Deborah Buchholz.

      16.      <u>Office Expenses and Overhead Items</u>

      a)      Shipping charges directly attributable to defending the Counterclaim <u>are reasonable</u>.

7

b) Process server fees and court reporter expenses directly attributable to defending the Counterclaim are reasonable.

c) Office expenses and supplies are not reasonable to bill the client.

d) Durable equipment like computers and lap tops, as well as software, are regarded as overhead items and are not reasonable to charge a client.

It is my professional opinion based upon my knowledge and experience that MAKS has overstated the reasonable and necessary attorney's fees and litigation expenses to be shifted to the Defendants as a result of the MSA.

AND FURTHER AFFIANT SAYETH NOT

_____
C. Scott Taylor

8

## OATH

STATE OF Tennessee    )
                                   )  ss.
COUNTY OF Knox       )

    Personally appeared, before the undersigned authority, a Notary Public in and for said County and State, C. Scott Taylor, who acknowledged, after being duly sworn, that the statements in the foregoing document are true to the best of his knowledge, information and belief.

    Witness my hand and official seal this the **12** day of **April**, 2013.

_Carol M. Schede_
Notary Public

My Commission Expires: **2-2-14**

[Notary Seal: CAROL M. SCHEDE, STATE OF TENNESSEE NOTARY PUBLIC, KNOX COUNTY]

9