UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MAKS, INC. GENERAL TRADING AND CONTRACTING CO., | ) | |
| | ) | |
| | ) | |
| Plaintiff / Counter-Defendant, | ) | |
| | ) | No. 3:10-CV-443 |
| | ) | (VARLAN/GUYTON) |
| v. | ) | |
| | ) | |
| STERLING OPERATIONS, INC., | ) | |
| *Formerly known as* | ) | |
| EOD TECHNOLOGY, INC., | ) | |
| | ) | |
| Defendant / Counter-Plaintiff. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the referral of the District Judge. Now before the Court is a Petition for Award of Contractual Attorney's Fees and Costs [Doc. 369], filed by MAKS Inc. General Trading and Contracting Co. Sterling Operations Inc. has responded in opposition to the Petition, [Doc. 372], and MAKS has made a final reply in support of the Petition [Doc. 377]. The Court finds that the Petition is ripe for adjudication, and for the reasons stated herein, the undersigned will **RECOMMEND** that the Petition be **GRANTED IN PART** and **DENIED IN PART**.

## I.      BACKGROUND

MAKS Inc. General Trading and Contracting Co. ("MAKS"), Gopalakrishna Pillai Ajeesh Kumar Kammarayil, Mohammed Azad Shabbir, John Doe 1, John Doe 2, and John Doe 3 filed the Complaint [Doc. 1], in this case on October 21, 2010. The Complaint contained four

claims for breach of contract relating to a contract between MAKS and Sterling,[1] which called for MAKS to construct certain building modules for installation at the Bagram Airforce Base in Afghanistan. On January 2, 2012, MAKS filed an Amended Complaint [Doc. 106], which added claims for trespass, conversion, negligence, tortious interference with contract, and assault. Sterling denied liability and asserted a counterclaim for breach of contract against MAKS. [Doc. 109]. MAKS denied liability with regard to Sterling's counterclaim. [Doc. 110].

This case proceeded to trial on November 13, 2012. At the conclusion of the trial, the jury returned a verdict in favor of MAKS, awarding MAKS $990,000.00 on its breach of contract claim with regard to Work Authorization 01, $975,000.00 on its breach of contract claim with regard to Work Authorization 02, $3,000.00 on its breach of contract claim with regard to the security contract, $1.00 on its trespass claim, and $1,000,000.00 on its conversion claim [Doc. 319]. The jury also found in MAKS's favor on Sterling's counterclaim for breach of contract and found in Sterling's favor on the assault claims of the individual plaintiffs [Id.]. After the Court ordered that MAKS elect between the remedies awarded for the breach of contract claim with regard to Work Authorization 02 and the conversion claim, MAKS filed a notice [Doc. 333], indicating that it had chosen to elect the award for the breach of contract with regard to Work Authorization 02.

On February 14, 2013, the District Judge entered a Memorandum, Opinion, and Order [Doc. 335], finding *inter alia* that MAKS is contractually entitled to recover the attorneys' fees and costs it incurred in defense of Sterling's counterclaim. The District Judge referred the attorneys-fees issue to the undersigned for determination of the reasonable amount of attorneys' fees and costs. On March 22, 2013, MAKS filed the instant petition and briefing on the issue

---

[1] The contract was actually between MAKS and EOD Technology Inc., a predecessor to Sterling Operations, Inc.. For ease of reference, the parties now refer to EOD Technology by reference to "Sterling," and the Court will similarly refer to "Sterling," rather than EOD Technology or EODT.

followed. On October 7, 2013, the District Judge denied various post-judgment motions including Sterling's Motion for New Trial and/or Renewed Motion for Judgment as a Matter of Law. Accordingly, this matter is now ripe for adjudication.

## II.     POSITIONS OF THE PARTIES

As stated above the District Judge has already determined that MAKS is contractually entitled to recover the attorneys' fees and costs it incurred in defense of Sterling's counterclaim. Thus, the parties' arguments before the undersigned focus upon the appropriate amount of the fees and costs.

### A.     Attorneys' Fees

In its Petition, MAKS moves the Court to award it $866,127.60 in attorneys' fees. [Docs. 369, 370]. The attorneys' fees request represents: 1109.6 hours billed by Joseph Hennessey at a rate of $600 per hour; 17.2 hours billed by Deborah Buchholz at a rate of $200.00 and 333.9 hours billed by Ms. Buchholz at a rate of $225.00; and 203 hours billed by John J. Beins at a rate of $600.00 per hour. [Doc. 370-1 at 35]. In submitting these hourly rates, MAKS argues that the Court has the power to depart from the usual rule that the locality of the litigation governs the reasonableness of the fees, because it was reasonable to hire an out-of-town specialist and the fees charged by out-of-town counsel were reasonable given their skill, experience, and reputation. [Doc. 370 at 13 (citing Hadix v. Johnson, 65 F.3d 532, 535 (6th Cir. 1995)]. MAKS maintains that out-of-town counsel were required to litigate this case because no experienced or similarly qualified attorneys in the Knoxville area were willing to represent MAKS against Sterling.

Specifically, MAKS argues that the rate of $600 per hour is reasonable because the most recent *Laffey* index for attorney rates in the Washington, D.C. metro area suggests a rate of $495.00 for attorneys with in excess of eighteen years' experience. [Id. at 17]. MAKS argues that counsel should also receive an upward variance, similar to those awarded in statutorily-based fee claims, for excellent results. [Id. (citing Perdue v. Kenny A., 559 U.S. 542 (2010))].

In regard to the other components of a lodestar calculation, MAKS argues that the number of hours billed are reasonable and do not include redundant billing by multiple attorneys. MAKS argues that Sterling's dilatory tactics contributed to the cost of the litigation and increased the amount of fees that Sterling must now pay for the additional fees that resulted from these tactics.

In support of its position, MAKS has filed the Declaration of Joseph A. Hennessey [Doc. 370-3], attesting to Mr. Hennessey's qualifications and experience. In addition, Mr. Hennessey describes his attempts to obtain counsel in Knoxville, the measures taken to save costs, and the Sterling tactics that escalated the fees and costs in this case. MAKS has also submitted declarations from: John J. Beins, who served as counsel for MAKS in this matter, [Doc. 370-4]; Deborah Buchholz, who also served as counsel for MAKS in this matter [Doc. 370-5]; William E. Wallace, an attorney practicing in Washington D.C., [Doc. 370-7]; and John A. Lucas, an attorney practicing in Knoxville, TN, [Doc. 370-8].

Sterling responds that the contractual provision entitling MAKS to attorneys' fees for its defense of its counterclaim is governed by Tennessee law, and it is limited to fees and expenses attributable to defending the counterclaim. [Doc. 372 at 2]. Sterling maintains that, even if there had been no counterclaim, MAKS would have been required to incur the majority of the fees and costs that have been submitted for reimbursement in connection with the counterclaim. Sterling

argues that MAKS has submitted almost all of its attorneys' time for reimbursement and has similarly asked for expenses that would have been incurred if the counterclaim had not existed – for example, the cost of an interpreter at trial. [Id. at 4]. Sterling has provided a matrix of its objections to specific time and costs, [see Doc. 372-1], and it maintains the only hours fairly attributable to the counterclaim are: 88.60 hours by Joseph Hennessey, 8.97 hours by Deborah Buchholz, and 30.0 hours by John Beins.

Sterling notes that, under Tennessee law, reasonableness is judged by a variety of factors, including the fees customarily charged in the locality for similar legal services. [Id. at 3 (citing Elchlepp v. Hatfield, 294 S.W.3d 146, 154 (Tenn. Ct. App. 2008))]. Sterling suggests that reasonable hourly rates of compensation for Knoxville are: $225.00 per hour for Mr. Beins, $225.00 per hour for Mr. Hennessey, and $175.00 per hour for Ms. Buchholz.

In support of its position, Sterling submits the Affidavit of C. Scott Taylor [Doc. 372-5], who has chaired the Knoxville Bar Association's Fee Dispute Resolution Committee since 2008 and practices in the Eastern District of Tennessee. From his review of the filings, Mr. Taylor opines that $600 an hour for a contract claim in Knoxville is not reasonable. [Id. at 5]. Sterling also submits the Affidavit of Brian C. Quist [Doc. 372-6], who served as counsel for Sterling in this case, and the Affidavit of Robert H. Green [Doc. 372-4], an attorney practicing in Knoxville, TN.

In its Reply, MAKS agrees that, for an expense or fee to be allowed under the fee-shifting provision of the contract, "the activity must have been undertaken, or the expense incurred, only because the [c]ounterclaim was filed." [Doc. 337 at 1]. However, MAKS maintains that the counterclaim was intertwined with the defense of Sterling's breach of contract claim and was extremely fact specific and dependent. [Id. at 2-3]. MAKS argues that, while there may have

5

been attorneys in Knoxville who were qualified to litigate this case, there were not attorneys willing to take the case because of Sterling's ties to the local community. MAKS argues that Mr. Green and Mr. Taylor lack the first-hand knowledge and the requisite experience in international litigation needed to opine on the reasonableness of the fees requested.

**B.     Costs**

MAKS moves the Court to award it $81,895.96, representing the costs incurred in this litigation. [Docs. 369, 370]. In support of this request, MAKS argues that the cost-shifting provision in the parties' contract is expansive and states "MAKS shall be entitled to recover all reasonable costs incurred in the defense of the claim, including staff time at current billing rates, court costs, attorney's fees, and other claim related expenses." [Doc. 370 at 18].

Sterling responds that the measure of reasonable costs is what a reasonable attorney in Knoxville would incur in litigating this action. [Doc. 372 at 8]. Again, Sterling maintains that the majority of the costs for which MAKS seeks compensation would have been incurred regardless of whether the counterclaim was at issue. Sterling also argues that costs such as billing a client for local mileage, parking, travel, accommodations, evening meals, and entertainment are not reasonable expenses, because such costs are not billed to clients when local counsel are used. In support of this position, Sterling cites the Court to Mr. Taylor's Affidavit [Doc. 372-5 at 6-7], which attests to the same. Sterling suggests that MAKS be allowed $680.99 in costs. [Doc. 372 at 9].

MAKS replies that, because the contract litigated in the counterclaim provides for "reasonable costs incurred in the defense of the claim . . . and other claim related expenses," MAKS must be reimbursed for the food and travel expenses of MAKS's attorneys. [Doc. 377]. MAKS moves the Court to employ a "but for" test in determining what costs are allowable, and

as an example, MAKS argues that the replacement of a computer is compensable because "but for" processing the high number of documents used in this case, the computer would not have been rendered unusable. [Id. at 7]. MAKS maintains that Mr. Taylor has no first-hand knowledge of the proceedings or trial in this case, and therefore, his statements should not be relied upon by the Court. [Id. at 6-7].

## III.    ANALYSIS

Based upon the choice of law in the parties' contract, the Court will address the award of fees and the award of costs pursuant to Tennessee law.

### A.    *Fees and Costs Attributable to the Counterclaim*

As an initial matter, the Court finds that it is appropriate to address MAKS's inclusion of virtually all of the time billed by counsel in the request for attorneys' fees relating to the counterclaim. MAKS argues that the fees are intertwined and cannot be separated. The Court finds that this position is not persuasive. Even if the Court assumes that Sterling's claim and the counterclaim are inextricably intertwined, common sense and the equities require that the Court not attribute all of the fees to the counterclaim. MAKS's claims and Sterling's counterclaim were based on the same contract and self-help by Sterling. They arguably mirrored one another, and given that MAKS alleged numerous tort claims in addition to its contract claims, logic dictates that MAKS's claims consumed more time in pretrial litigation and during trial than did Sterling's counterclaim.

Thus, the Court finds that it would be inequitable and illogical to award MAKS the entirety of its fees based upon its prevailing on Sterling's counterclaim. The Court, therefore, finds that MAKS's fee request should be reduced by forty percent (40%) to account for the fact

that MAKS is *only* being awarded fees and costs for litigation of the counterclaim.

**B.**     ***Attorneys' Fees***

When the parties' contract provides that the prevailing party is entitled to reasonable attorney's fees in litigation to enforce the contract, the party who prevails is contractually entitled to recover its reasonable attorney's fees, and the court has no discretion regarding whether to award fees. See Albright v. Mercer, 945 S.W.2d 749, 751 (Tenn. Ct. App. 1996); Airline Constr. Inc. v. Barr, 807 S.W.2d 247, 270 (Tenn. Ct. App. 1990). However, the court must determine the reasonableness of the fees requested, and "where a 'reasonable' fee is called for, the award must be based on the guidelines by which a reasonable fee is determined" under Tennessee law. Albright, 945 S.W.2d at 751 (quoting Nutritional Support Servs., Ltd. v. Taylor, 803 S.W.2d 213, 216 (Tenn. 1991)).

Tennessee courts hold that the reasonableness of the fees is to be evaluated using the factors outlined in Rule 1.5 of the Tennessee Rules of Professional Conduct. See Wright v. Wright, 337 S.W.3d 166, 176 (Tenn. 2011); Connors v. Connors, 594 S.W.2d 672, 676 (Tenn.1980); Hosier v. Crye-Leike Commercial, Inc., 2001 WL 799740 (Tenn. Ct. App. July 17, 2001). The relevant factors include:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) The fee customarily charged in the locality for similar legal services;
>
> (4) The amount involved and the results obtained;

8

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) Whether the fee is fixed or contingent;

(9) Prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10) Whether the fee agreement is in writing.

Tenn. Sup. Ct. R. 8, RPC 1.5. While these factors were codified relatively recently, the Supreme Court of Tennessee has noted they "are neither new nor novel considerations in the determination of a reasonable attorney's fee." Wright, 337 S.W.3d at 177.

Moreover, the courts of the State of Tennessee have specifically declined to apply a lodestar calculation, and they instead favor applying these factors. See United Med. Corp. of Tenn., Inc. v. Hohenwald Bank and Trust Co., 703 S.W.2d 133, 137 (Tenn.1986) (finding no advantage to the lodestar method over the application of the factors identified); Wright, 337 S.W.3d at 181 (discussing the holding in United Med. Corp. and extending the holding to fees charged in cases involving minors); Welcher v. Central Mut. Ins. Co., 2013 WL 1183314, at *7 (Tenn. adopting findings of Workers Comp. Panel, 2013) ("The Court declined to adopt the 'lodestar' approach and instructed trial courts to consider the factors set forth in Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.5(a).").

The Court finds that Tennessee has not adopted a pure lodestar analysis that is most often used in federal courts addressing fee-shifting statutes and the like. However, the Court finds that the lodestar analysis is reflected the Court's analysis of this issue pursuant to the Tennessee

factors. Thus, the Court has reviewed the authority cited to it regarding federal lodestar analysis – see, e.g., MAKS Memo. Doc. 370 at 13 – but the Court finds that this authority is neither binding nor strongly persuasive.

The counterclaim at issue was a breach of contract claim, which alleged that the Master Subcontract Agreement to provide re-locatable buildings/modules was a contract for sale of goods subject to the Uniform Commercial Code, as adopted in Tennessee, and that MAKS had breached the contract by not delivering the specified modules within the time allotted under the contract. [Doc. 6 at 17-18]. MAKS answered the Counterclaim by admitting that the parties' had a contract, which provided that Tennessee law was applicable, and denying the allegation that it failed to deliver the specified modules within the time allotted under the contract. [Doc. 8].

With regard to attorneys' fees and costs, the contract between the parties provided: "If a dispute arises relating to the performance of the Work covered by this Agreement, and . . . [if] Subcontractor is the prevailing party, MAKS shall be entitled to recover all reasonable cost [sic] incurred in the defense of the claim, including staff time at current billing rates, court costs, attorney's fees, and other claim-related expenses." [Doc. 1-1 at 10].

1.    *The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly*

With the parameters of the counterclaim in mind, the Court turns to the factors under Tennessee law. The first factor encompasses the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly. MAKS argues that this case required experience in complex-international litigation and construction delay experience. The Court has considered the counterclaim and finds that, though the facts surrounding the claim were set in a unique, international location, the claim was a rather

10

simple matter that did not require skills or experience in excess of the skills and experience possessed by a practitioner specializing in commercial law in Tennessee with slightly above average level of experience. The questions presented were not novel, and to the contrary, were quite similar to the basic contract issues presented in law school classes. Numerous practitioners in this District possess the skill required to perform the legal services in this case. Thus, the Court finds that this factor does not weigh in favor of the high fees award requested.

2.     *The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer*

With regard to the likelihood that defense of this counterclaim would preclude other employment by the lawyer, the Court finds that this case may have excluded some other employment opportunities, but the Court finds that it would not have severely limited counsel's ability to accept other work. While the billing entries for 2011 are numerous they do not reflect 30 or 40 hours per week per attorney being devoted to the counterclaim – e.g. 4.9 hours billed for *all* claims during week of Feb. 6-12, 2011; 0.1 hours billed for *all* claims during week of May 1-7, 2011; 1.0 hours billed for *all* claims during week of Sept. 11-17, 2011. Even though the litigation intensified in 2012 – e.g. 30.6 hours billed by Joseph Hennessey for *all* claims during week of June 17-23, 2012 – the activity waxed and waned to a degree that the Court cannot conclude that counsel was precluded from taking other cases. Moreover, the instant award is limited to the counterclaim, and thus, not all of the hours billed for the case in any given week can be attributed to the counterclaim.

3.     *The fee customarily charged in the locality for similar legal services*

Next, the Court considers the fees customarily charged in Knoxville and the Eastern District of Tennessee for similar legal services. MAKS moves the Court to award it $600 per hour for 1,312.6 of the 1,663.7 hours it billed in this case. MAKS has submitted affidavits

attesting to the reasonableness of this fee in Washington D.C., along with evidence of the cost of living in Washington D.C.

MAKS has not submitted any affidavit attesting to the reasonableness of this hourly rate for any type of litigation in Knoxville. To the contrary, the only affidavit MAKS submitted from a practitioner in Knoxville attests to the reasonableness of $200 to $225 per hour. Mr. Taylor, an attorney with experience practicing in Knoxville and addressing fee disputes in Knoxville, attests in his affidavit that "$600 an hour for Mr. Hennessey and Mr. Beins to defend a counterclaim in Federal Court in Knoxville in not reasonable." [Doc. 372-5 at 5]. Similarly, Robert Green, an experienced practitioner well-versed in construction litigation and arbitration both in Knoxville and outside of the region, attests that, "[b]ased upon the prevailing rates for attorneys in the Knoxville area for litigating construction related cases, . . . senior attorneys with over 20 years of litigation experience [charging] an hourly rate between $250.00 and $300.00 is reasonable" [Doc. 372 at 3-4].

The sworn testimony of Mr. Taylor and Mr. Green is consistent with the case law of the Eastern District of Tennessee. See Penn. Higher Educ. Assistance Agency v. Coffey, 2013 WL 1342805 (E.D. Tenn. Mar. 7, 2013) (finding $250.00 per hour to be a reasonable rate on a contract claim in Chattanooga); Trentham v. Hidden Mountain Resorts, Inc., Case No. 3:08-CV-23, Doc. 154 (E.D. Tenn. Sept. 2, 2010) (awarding $260.00 in an employment case to an attorney who has practiced in Knoxville since 1949); Doherty v. City of Maryville, 2009 WL 3241715, *7 (E.D. Tenn. Sept. 30, 2009) (awarding $225 per hour rate for partners and a $175 per hour rate for associates of a law firm that successfully litigated a Constitutional claim in Knoxville); Goodman Properties Inc. v. Blosser, 2012 WL 6765626 (E.D. Tenn. Nov. 13, 2012) (finding $275.00 per hour to be a reasonable rate on a contract claim in Chattanooga); Loyless v.

Oliveira, 2012 WL 775084 (E.D. Tenn. Feb.17, 2012) (finding $300 to be a relatively high hourly rate for the Chattanooga legal market but approving the fee in light of no objections); McKay v. Reliance Standard Life Ins. Co., 654 F. Supp.2d 731, 746 (E.D. Tenn. 2009) (approving a $250 hourly rate in an ERISA case); Grant v. Shaw Environmental, Inc., 2013 WL 1305599 (E.D. Tenn. Jan. 30, 2013) (reducing hourly rate in FLSA case, including a request for $440 per hour for out-of-town counsel, to a weighted average of $248.42) *amount of award sustained at* Grant v. Shaw Environmental, Inc., 2013 WL 1305596 (E.D. Tenn. Mar. 28, 2013).

Based upon the evidence before it and the case law of this Court, the Court finds that examination of the fees customarily charged in Knoxville and the Eastern District of Tennessee for similar legal services weighs in favor of a substantial reduction in the hourly rate charged for the majority of the hours before the Court. Specifically, the Court finds that this factor weighs in favor of not awarding an hourly rate greater than $300.00.

In reaching this conclusion, the Court finds it is appropriate to distinguish two cases from the instant case: Adcock-Ladd v. Sec'y of Treasury, 227 F.3d 343 (6th Cir. 2000) and Coleman v. Coleman, 2013 WL 5308013 (Tenn. Ct. App. Sept. 19, 2013). While neither of these cases was cited to the Court in the parties' briefs, the undersigned anticipates that they may be cited in objections to this Report and Recommendation.

In Adcock-Ladd v. Sec'y of Treasury, 227 F.3d 343 (6th Cir. 2000), plaintiff prevailed on a federal employment discrimination case. David L. Shapiro, an attorney in Washington, D.C., was retained to depose a key witness, and this deposition was credited as eventually yielding a $350,000.00 settlement in plaintiff's favor. Id. at 345-46. However, the parties were not able to reach an agreement regarding the fees to be paid to plaintiff pursuant to 42 U.S.C. § 2000e, and they submitted the issue to the court for decision. Plaintiff moved the Court to compensate the

42.3 hours billed by Mr. Shapiro at the rate he customarily charged for work performed in the District of Columbia.  Id. at 346.  Applying the federal lodestar analysis, the magistrate judge recommended that Mr. Shapiro be compensated at his full rate for time expended in relation to the deposition, but the district judge did not accept this recommendation and ruled that Mr. Shapiro would be compensated at Knoxville-area rates.  Id. at 347-48.

On review the Court of Appeals for the Sixth Circuit reversed the decision finding that the "trial court erroneously concluded that the hourly rate prevailing within the venue of the court wherein the case was commenced will *always* constitute the maximum allowable reasonable hourly rate for legal work performed by a foreign counselor in a venue other than the jurisdiction wherein the case was commenced."  Id. at 350.  Moreover, the Court of Appeals found that the court had failed to perform a proper lodestar analysis.  Id.  Nonetheless, the Court of Appeals did recognize that "it is not an abuse of discretion for a court to apply local market rates" and endorsed the example that "a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate."  Id. (citing Hudson v. Reno, 130 F.3d 1193, 1208 (6th Cir. 1997)).

The undersigned finds that the decision in Adcock-Ladd is distinguishable from the instant case for a number of reasons.  First, the deposition at issue had to be performed at the deponent's place of residence in Washington, D.C.  In the instant case, MAKS has not directed the Court to any work performed in the District of Columbia that could not have been performed in Knoxville.  Second, the Court of Appeals in Adcock-Ladd endorsed, albeit in dicta, the view that a practitioner should be compensated at the local rate for work performed in the locality.  Third, the Adcock-Ladd decision applied the federal lodestar method, rather than Tennessee law.

14

Finally, the Court of Appeals focused upon the lack of discussion and the absolutism of the trial judge's decision in overturning it. In the instant case, the Court is rendering a thorough analysis of this issue.

The Court turns next to <u>Coleman v. Coleman</u>, 2013 WL 5308013 (Tenn. Ct. App. Sept. 19, 2013), an opinion which was rendered after briefing on this issue had closed. In <u>Coleman</u>, the underlying matter was a divorce case, wherein wife and husband in Memphis each held 50% interests in an international corporation. <u>Id.</u> at *1. Wife suspected that husband was involved in international business dealings that potentially amounted to criminal activity, and when her local counsel did not have the requisite skills to address these issues, she retained the firm of ShawnCoulson, which has offices in Washington D.C., Brussels, and London. <u>Id.</u> at *2. Wife executed an engagement agreement with ShawnCoulson that stated that her counsel's rate was $575 per hour. <u>Id.</u> at *3. The wife and husband eventually reached a settlement whereby wife received approximately $37 million in assets. <u>Id.</u>

The husband moved for the court to adopt the spouses' settlement, and around the same time, ShawnCoulson filed a "Notice of Attorney Lien on Right of Action and Affidavit of Attorney," moving the court to award it attorney fees and expenses of $116,840.22, plus the expense incurred in filing the motion. <u>Id.</u> at *6. Wife disputed the requests and argued that she had already paid $600,000.00 to ShawnCoulson and $650,000.00 to her local counsel. <u>Id.</u> at *7. The court commenced a trial on the fees issue. Evidence at trial included: testimony from the wife that she was dissatisfied with the representation and that she did not add up the bills from counsel as they came to her; testimony that the rate charged by ShawnCoulson was customary in Washington D.C.; and testimony that $500 was the rate a few of the most experienced attorneys in Memphis charged. <u>Id.</u> at *8-11. At the conclusion of the trial, the court awarded

ShawnCoulson essentially all of the fees incurred, at its customary rates. Id. at *11. The wife appealed, arguing that the trial court erred in finding that the ShawnCoulson fees were reasonable. Id.

The Court of Appeals found that the trial court thoroughly examined the ten factors from the Tennessee Rules of Professional Conduct and did not abuse its discretion in holding that the fee agreement with counsel was "fair at its inception and entered into in good faith." Id. at *14. In its review, the Court of Appeals noted that a few attorneys in Memphis charged $500 per hour and that the ShawnCoulson rates were within the norm for the area of expertise. Id. at *15. The Court of Appeals indicated that, perhaps wife, "from the safety of her current perch and with the benefit of hindsight now feels free to deride the attorneys' efforts as indulging flights of fancy at her expense." Id. at *18. The Court of Appeals refused to endorse the wife's case of buyer's remorse, and instead, it found that the trial court did not abuse its discretion. Id.

The undersigned finds that Coleman is distinguishable from the instant case for numerous reasons. First, both the trial court and the appellate court in Coleman focused upon the wife's choice to contract with counsel at the rate of $575.00 per hour. Both courts noted that the wife was a sophisticated businesswoman with years of experience running a multi-million dollar company. Thus, both opinions focused upon the wife's decision to contract for top-tier legal services on a complicated case, in which she stood to gain or lose millions, and her later arguments that the rates charged were unreasonable. In the instant case, Sterling did not contract to pay fees at a rate of $600.00 per hour only to later regret its bargain. Instead, Sterling entered into a contract that provides for reasonable attorneys' fees, not for fees of the most accomplished practitioners in a venue of MAKS's choosing. Additionally, there is no contract before the Court demonstrating that MAKS agreed to pay $600.00 per hour. The Court finds that both the nature

16

of the agreement and the equities of the contract enforcement are distinguishable from <u>Coleman</u>.

Second, in <u>Coleman</u> the wife recovered $37 million in assets. In the instant case, MAKS describes the counterclaim as a $6 million dollar claim. Thus, the actual recovery in <u>Coleman</u> was four times what the highest level of recovery could have potentially been on the counterclaim. Therefore, the Court finds that the recovery and the amount in controversy in <u>Coleman</u> far exceeded those in the instant case.

Further, the Court finds that <u>Coleman</u> was litigated in Memphis, which is a larger metropolitan area than Knoxville, and based upon the testimony it appears that the apex of hourly rates in Memphis is considerably higher than the highest hourly rates charged in Knoxville or in the Eastern District of Tennessee. MAKS has not presented any evidence to the Court indicating that rates charged by practitioners in Knoxville approach $500.00 per hour.

Based upon the foregoing, the Court finds that the holdings in both <u>Adcock-Ladd v. Sec'y of Treasury</u>, 227 F.3d 343 (6th Cir. 2000) and <u>Coleman v. Coleman</u>, 2013 WL 5308013 (Tenn. Ct. App. Sept. 19, 2013) are distinguishable from the instant case.

In addition, the Court has considered the MAKS suggestion that the Court correlate counsel's rate to the *Laffey* index. The Court finds that Tennessee law does not support factoring in the *Laffey* index, and MAKS has not cited the Court to any Tennessee cases holding that the Court must consider this index.

Further, the Court finds that MAKS's request that the Court permit an upward variation in the fees requested pursuant to <u>Perdue v. Kenny A.</u>, 559 U.S. 542 (2010), to be unpersuasive, because the Court in <u>Perdue</u> was applying the federal lodestar calculation of attorneys' fees. Moreover, the Court explained that the circumstances in which such upward variations were appropriate "are indeed rare and exceptional, and require specific evidence that the lodestar fee

would not have been adequate to attract competent counsel." Id. at 554 (internal quotations removed).

The Court concludes that the evidence before the Court, and applicable case law, support the Court's finding that evaluation of the fees customarily charged in Knoxville and the Eastern District of Tennessee for similar legal services weighs in favor of not awarding an hourly rate greater than $300.00.

*4.    The amount involved and the results obtained*

The Court finds that the counterclaim involved a potential liability of at most $6 million dollars and that MAKS's counsel obtained a favorable judgment in MAKS's favor. That is, counsel obtained a judgment of no liability for MAKS on the counterclaim. The Court finds that this factor weighs in favor of affording compensation commiserate with this judgment.

*5.    The time limitations imposed by the client or by the circumstances*

Neither party has directed the Court to specific time limitations imposed by the client or the circumstances, and the Court finds that no unique time limitations were imposed by the client or the circumstances. Specifically, the Court finds that this case did not involve unique requests for injunctive relief or an urgency imposed by a finite time for disposition. Accordingly, the Court finds that this factor does not favor any amplification of the fees charged due to urgency or other circumstances.

*6.    The nature and length of the professional relationship with the client*

The Court finds that MAKS has not directed the Court to any ongoing relationship that MAKS had with counsel. [See Doc. 370-3 at ¶¶ 1-20].

However, the Court finds that MAKS's position regarding the availability of local counsel is best addressed through this factor. MAKS maintains that, because Sterling was located

in Knoxville and employed numerous former service members, local counsel declined to represent MAKS. [Id. at ¶¶ 17-18]. MAKS has not produced an affidavit from any officer or agent of MAKS attesting to any search they undertook on their behalf, nor has MAKS submitted the affidavit of any attorney in Knoxville or the Eastern District of Tennessee who declined to join as co-counsel in this matter.

The Court has considered the search undertaken by Mr. Hennessey to find co-counsel in this matter. The Court is not satisfied that there were no practitioners in Knoxville or the Eastern District of Tennessee, with the requisite skill, that would have litigated this case. Moreover, Mr. Hennessey's effort to find local counsel, which the Court cannot find to have been exhaustive, does not convince the Court that his search supports finding that the fees shifted to Sterling under the contract should be billed at $600.00 per hour based upon the prevailing rates in one of the most expensive metropolitan areas in the United States.

7.      *The experience, reputation, and ability of the lawyer or lawyers performing the services*

The Court finds that Mr. Hennessey and Mr. Beins both possess impressive academic credentials and professional experience. The Court fully credits their experience, including experience in international litigation, litigation involving the Federal Acquisition Regulations, and complex civil litigation.

However, the evidence before the Court does not support finding that these skills were required to litigate the counterclaim. As noted above, the counterclaim involved litigating a contract for goods, governed by Tennessee law. While the fact that the events pertinent to this litigation took place in the Middle East and Afghanistan appears to add a complexity to the matter, these events were completed well before this litigation began. Unlike Coleman or other international litigation, trips to the Middle East and Afghanistan to discern developments were

not necessary. The modules had either been delivered or they had not been delivered, and the majority of the persons with knowledge on this issue were located in the United States.

Accordingly, the Court finds that, while counsel for MAKS are skilled practitioners, the skill possessed by counsel was not necessary to litigate the counterclaim in this matter.

8. *Whether the fee is fixed or contingent*

MAKS has not produced their agreement with counsel or expounded upon whether the recovery of the fees expended in defending the counterclaim was contingent. Certainly the cost-shifting of the contract was contingent, but it is not clear from the filings whether the representation was undertaken on a contingency basis as between MAKS and counsel. The Court finds that this factor does not weigh in favor of either party's position.

9. *Prior advertisements or statements by the lawyer with respect to the fees the lawyer charges*

In his declaration [Doc. 370-3], Mr. Hennessey does not attest to advertising and regularly receiving the rate of $600.00 per hour. In his declaration [Doc. 370-4], Mr. Beins does not attest to the fact that he or Mr. Hennessey regularly charge and receive $600.00 per hour. Instead, he attests generally that the rate is "fair and reasonable" given the complexity of the matter and the fact that the events at issue occurred in the Middle East. [Id. at ¶ 6].

The Court finds that the evidence before the Court does not demonstrate that either Mr. Beins or Mr. Hennessey regularly advertise, charge, and receive $600 per hour for their services. Moreover, unlike in Coleman, there is no evidence that Mr. Beins or Mr. Hennessey executed a contract with MAKS stating that MAKS would pay either of these attorneys at such rates.

10.     *Whether the fee agreement is in writing*

MAKS has not produced a written contract stating the fees and/or rates that MAKS agreed to pay counsel.  The Court finds that this failure to produce a written contract weighs against finding that the fees are reasonable.

11.     *MAKS should be awarded $283,408 representing the attorneys' fees reasonably incurred in litigating the counterclaim in this litigation.*

Based upon the Court's finding that only 60% of the hours billed are attributable to the counterclaim, and the Court's weighing of the relevant factors, the Court finds that MAKS should be awarded $283,408, representing the attorneys' fees reasonably incurred in litigating the counterclaim.  The Court's calculation of this figure is:

| | Hrs Req. | Hrs Awarded | Rate Req. | Rate Awarded | Total |
|---|---|---|---|---|---|
| Joseph  Hennessey | 1109.6 | **665.8** | $600 | **$300** | $199,740 |
| John Beins | 203 | **121.8** | $600 | **$300** | $36,540 |
| Deborah Buchholz | 17.2 | **10.3** | $200 | **$200** | $2,060 |
| Buchholz (cont'd) | 333.9 | **200.3** | $225 | **$225** | $45,068 |
| | | | | Total | **$283,408** |

Accordingly, the Court will **RECOMMEND** that MAKS be awarded **$283,408.00**, representing the attorneys' fees reasonably incurred in litigating the counterclaim in this litigation.

21

**B.**     **Costs**

MAKS moves the Court to award it $81,895.96 as costs incurred in litigation of the counterclaim. This total represents $33,524.46 in miscellaneous costs, and an additional $48,371.50 in MAKS staff time.

Initially, the Court finds that the costs requested, like the attorneys' fees requested, are overly expansive in that the request appears to include essentially all of the costs incurred in this litigation without discounting for the other claims litigated in this case. The Court finds that it would be inequitable and illogical to award MAKS the entirety of the costs it has requested based upon it prevailing on Sterling's counterclaim. The Court, therefore, finds that MAKS's request for costs should be reduced by forty percent (40%) to account for the fact that MAKS is *only* being awarded fees and costs for litigation of the counterclaim.

Additionally, the Court finds that MAKS has requested reimbursement for costs that are not reasonable. For example, MAKs has submitted entire supermarket bills for counsel, which include charges for razors, dishwasher packs, and kitchen sponges. [Doc. 370-2 at 3, 217]. Additionally, MAKS has requested reimbursement for IT equipment that is more appropriately considered a business expense. For example, counsel moves the Court to reimburse counsel the cost of buying an iPad video connector, the cost of a "[c]arrying case for equipment," and the purchase of a new computer. [Id. at 1-3]. Moreover, MAKs has moved the Court to reimburse counsel's evening meals at some of the most expensive restaurants in Knoxville – *e.g.*, Nama Sushi Meals, costing $29.94, $35.54, $31.02, $51.64, $24.74, $42.11, and $27.80, most of which appear to be for a single person, id. at 1-3 – and for a pricey ($92.46) Sunday brunch on December 2, 2012, id. at 4. MAKs has failed to remove costs for in-room movies and other hotel charges from the costs it submitted for lodging. See id. at 2, 72-73. MAKS has also submitted

rental car charges for November 10 to December 5, 2014, despite staying in one of Knoxville's most expensive hotels that is less than two blocks from the courthouse during a portion of the same period.  Id. at 232, 235.  The dates submitted for the car rental include approximately nine business days, weekends, and holidays (including Thanksgiving day) during which the trial of this matter was not taking place.  Id. at 235.

The Court finds that reimbursing all of these costs would be inconsistent with the parties' agreement, which provides for reimbursement of "reasonable cost[s] incurred in the defense of the claim, including staff time at current billing rates, court costs, . . . and other claim-related expenses."  The Court cannot find that these charges were incurred in the defense of the counterclaim, and to the contrary, many of the costs appear to be costs that are incurred simply in everyday living, not as a result of being engaged in a trial or litigation.  Thus, for the same reason, the Court cannot consider these costs – e.g., in-room movies, new computers, Sunday brunch – to be "claim-related expenses."

Moreover, finding these costs to be reasonable would be inconsistent with the case law of this Court.  See Doherty v. City of Maryville, Case No. 3:07-CV-157, Docs. 125, 126 (E.D. Tenn.) (reducing costs requested and disallowing charges for expensive meals, in-room movies, valet parking).  Allowing such costs would also be inconsistent with the undersigned's own knowledge of costs reimbursed in litigation in Knoxville and with Mr. Taylor's sworn statements about costs in Knoxville.  [Doc. 372-5 at 7].

Accordingly, the Court will reduce the $33,524.46 in miscellaneous costs requested by an additional twenty-five percent (25%), to discount for the request for reimbursement of unreasonable costs.

23

Therefore, the Court finds that $44,108.91, represents the reasonable costs that were incurred in litigation of the counterclaim and are appropriate for reimbursement by Sterling under the parties' agreement. Consistent with its discussion above, the Court's calculation of this figure is:

|  | Initial Req. | After 40% Disc. | After Add'l 25% Disc. | Total |
|---|---|---|---|---|
| Misc. Costs | $33,524.46 | $20,114.68 | $15,086.01 | $15,086.01 |
| Staff Time | $48,371.50 | $29,022.90 | n/a | $29,022.90 |
|  |  |  | Total | $44,108.91 |

Accordingly, the Court will **RECOMMEND** that MAKS be awarded **$44,108.91**, representing the reasonable costs incurred in litigation of the counterclaim and pursuant to the parties' agreement.

## IV. CONCLUSION

Based upon the foregoing, the undersigned **RECOMMENDS**[2] that the Petition for Award of Contractual Attorney's Fees and Costs **[Doc. 369]** be **GRANTED IN PART and DENIED IN PART**. Consistent with the above findings and analysis, the undersigned **RECOMMENDS** that MAKS be awarded **$283,408.00**, representing the attorneys' fees reasonably incurred in litigating the counterclaim in this case, *and* **$44,108.91**, representing the reasonable costs incurred in litigation of the counterclaim.

Respectfully Submitted,

  /s H. Bruce Guyton
United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).